# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EARNEST WAYNE OVERTON,     )
                           )
             **Petitioner,**    )
                           )      **CIVIL ACTION**
**v.**                       )
                           )      **No. 15-3266-KHV**
JAMES HEIMGARTNER, et al.,   )
                           )
            **Respondents.**   )
_____)

## MEMORANDUM AND ORDER

       Pro se petitioner Earnest Wayne Overton seeks a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. Petition For Writ Of Habeas Corpus (Doc. #1) filed December 4, 2015. For the reasons

stated below, the Court denies the petition and denies a certificate of appealability.

## Factual Background

       In 2001, the District Court of Sedgwick County, Kansas found petitioner guilty of rape and

aggravated indecent liberties with a child.[1] Petitioner alleges constitutional violations during the

state court proceedings. See Doc. #1. The Kansas Court of Appeals summarized the evidence at

trial and petitioner's conviction as follows:

> A.D. testified that when she was in the seventh grade, she attended Truesdell
> Middle School. Overton was an eighth-grade science teacher at the school. Overton
> befriended A.D. by telling her that she was attractive. A.D. testified that Overton
> tried to kiss her during a planning period in his classroom, but she turned away. He
> tried again and kissed her on her lips. After school, Overton kissed A.D. again while
> she was working in the gym.
>
> Overton and his wife, Michelle, wanted A.D. to babysit for their children for
> the summer. One day, Overton drove A.D. to show her the house. After locking the

---

[1]    Kan. Stat. Ann. § 21-3502(1)(a); Kan. Stat. Ann. § 21-3504(a)(2). In 2010, the
Kansas legislature recodified the Kansas Criminal Code and repealed the prior code, including Kan.
Stat. Ann. §§ 21-3502 and 21-3504. See Laws 2010, ch. 136, § 307, eff. July 1, 2011.

garage doors and leading A.D. downstairs, Overton turned on the radio and kissed her and felt her "vagina area" outside her clothes. Overton told her he cared for her. Moreover, he would always be there for her. A.D. testified that she told him she was having her period and she wanted to leave. Overton took her back to school. A.D. did not mention the incidents to anyone because Overton told her he would ruin her if she told anyone about what had happened.

During the summer, A.D. babysat the Overton children from morning until midafternoon on Mondays through Fridays. One day while Michelle was at work and the children were away, Overton started kissing A.D. on her neck. Overton pulled A.D. into the bedroom, laid her down on a towel on the bed, and took her shorts and underwear off. While he held her hands above her head with his hand, he penetrated her vagina with his penis. She could not move or get up, and she was crying. A.D. stated that she was a virgin and that she bled everywhere on the towel. Overton washed himself, got dressed, and went back to his business. A.D. went back to her chores. A.D. returned to Overton's house the next day to babysit. A.D. stated Overton forced sex on her "three, four [or] five" times during the summer.

T.R. testified that while attending Truesdell, she talked to Overton between classes and after school about her home life.

After T.R. went to high school, she babysat daily for the Overtons after school. Sometime between December 1996 and T.R.'s 16th birthday in January 1997, T.R. was staying overnight babysitting at Overton's house, while Overton and his wife went out with some friends. After they came home, Michelle went to bed and Overton went downstairs where T.R. was sleeping. Overton asked if she wanted to have sex with him. Although she said no, Overton took T.R. to a downstairs room and pushed her down on the floor. Overton held her hands over her head with his hand. He undressed her with his free hand. He pulled his pants down and inserted his penis into her vagina. Overton told her not to say anything or he would kill her or have someone kill her and her family.

T.R. continued to babysit for the Overtons after she turned 16, and Overton forced her to have sex five or six more times.

G.B. testified that while attending Truesdell, she and Overton became friends. Overton told her she did not have to do homework because he would give her an A.

In the fall of her eighth grade year, G.B. started babysitting for Overton. After Christmas of that year, Overton took her into the storage room after his class, shut the door, lifted her up on a counter, and kissed her neck. Overton touched her breast under her bra, and G.B. jumped down, pushed him away, and ran out of the room to her next class.

About a month later, Overton asked G.B. to babysit for his children. Overton drove G.B. to his home. Once inside the house, Overton locked the door. He told G.B. he did not have to pick up his children yet, but they "could have a little fun before they got home." Overton grabbed her and led her to his bedroom and pushed her onto the bed. Overton held her hands over her head with one hand and took her pants off with his free hand. Overton spread her legs and put his penis inside of her, while she was crying and telling him to stop. Overton told G.B. not to tell anybody about the incident because he had friends who could hurt her and he could get her mother into trouble.

After Overton took G.B. home, G.B. told her mother what had happened. Although her mother wanted to call the police, G.B. told her about Overton's threats. They decided not to call the police.

Several years later, G.B. shared with the police what Overton had done. On July 6, 2001, Overton was arrested on allegations made by G.B., and on July 12, 2001, he was formally charged with aggravated indecent liberties with a child and rape against G.B. in case No. 01CR1633.

On July 25, 2001, Overton was charged with three counts of rape: counts 1 and 2 against T.R. and count 3 against A.D. These charges were made in case No. 01–CR1800. The charges in case Nos. 01CR1633 and 01CR1800 were consolidated and later amended to include count 1, aggravated indecent liberties with a child against G.B.; count 2, rape of G.B.; count 3, aggravated indecent liberties with a child against G.B. as an alternative charge to count 2; count 4, rape of T .R.; count 5, aggravated indecent liberties with a child against T.R., as an alternative charge to count 4; count 6, rape of T.R.; count 7, aggravated indecent liberties with a child against T.R., as an alternative charge to count 6; count 8, rape of A.D.; and count 9, aggravated indecent liberties with a child against A.D., as an alternative charge to count 8.

At the preliminary hearing, the trial court dismissed count 7 for lack of evidence and counts 8 and 9 as being outside the statute of limitations of 5 years. The State moved to admit the evidence relating to A.D. under K.S.A. 60–455 to show a plan. The trial court granted the State's motion to admit the evidence to show "there was a plan or a common scheme that Mr. Overton entered into regarding these young girls."

The jury found Overton guilty of rape and aggravated indecent liberties with a child against G.B. The jury found Overton not guilty of rape and aggravated indecent liberties with a child against T.R. Overton was sentenced to 184 months' imprisonment for rape and a concurring term of 41 months for aggravated indecent liberties with a child.

State v. Overton, No. 88,897, 2003 WL 22897263, at *1-3 (Kan. Ct. App. Dec. 5, 2003).

Overton appealed his conviction and sentence to the Kansas Court of Appeals. He argued that the trial court erred when it (1) admitted A.D.'s testimony concerning her allegations against petitioner because this evidence violated Kan. Stat. Ann. § 50-455 and was more prejudicial than probative; (2) allowed the jury to view telephone conversation transcripts, which the court did not admit into evidence, during deliberations and (3) failed to recall the jury to investigate the prejudicial effect of a spectator's comment made during recess. See id. at *5-10. The Kansas Court of Appeals affirmed his conviction and sentence. Id. at *12. It held that the trial court had erred in allowing the jurors to view the telephone conversation transcripts but found that this error was harmless. See id. at *8, *12. On the same grounds, petitioner appealed to the Kansas Supreme Court. In June of 2005, the Kansas Supreme Court affirmed. See State v. Overton, 112 P.3d 244, 255 (Kan. 2005) (finding harmless error in jurors viewing conversation transcripts).

In April of 2006, in the District Court of Sedgwick County, Kansas, petitioner filed a post-conviction petition under state law. See Memorandum Of Law In Support Of Petition For Relief Pursuant to K.S.A. 60-1507 dated Apr. 13, 2006, Overton v. State, Sedgwick Cty. Kan., No. 06-CV-1581 ("Petitioner's First State Habeas Memorandum"). With the assistance of new counsel, petitioner primarily alleged ineffective assistance of trial counsel. Overton v. State, No. 99,007, 2009 WL 743175, at *1 (Kan. Ct. App. Mar. 13, 2009). Specifically, petitioner asserted that counsel refused to let him testify on his own behalf and failed to object to the court's response to possible threats toward jurors. Id. The district court summarily denied his petition. See Order Denying Relief Pursuant to K.S.A. 60-1507 dated Aug. 23, 2006, Overton v. State, Sedgwick Cty. Kan., No. 06-CV-1581. Petitioner appealed. Overton, 2009 WL 743175 at *1. The Kansas Court of

Appeals affirmed all but one claim, remanding for an evidentiary hearing concerning petitioner's allegation that trial counsel had denied him the right to testify on his own behalf. Id. at *7-8. The Kansas Supreme Court denied review.

On remand, the district court held an evidentiary hearing at which petitioner and his trial counsel testified regarding their discussions about whether petitioner would testify during his trial. See Overton v. State, order dated Sept. 22, 2010, Sedgwick Cty. Kan., No. 06-CV-1581, at 2 (unpublished opinion). The district court ultimately concluded that counsel had informed petitioner of his right to testify and that after consulting with counsel, petitioner knowingly waived that right. Id. On appeal, the Kansas Court of Appeals affirmed. See Overton v. State, No. 105,996, 2012 WL 3822675, at *3 (Kan. Ct. App. Aug. 31, 2012). The Court of Appeals declined to second-guess the trial court determinations concerning witness credibility and the weight of conflicting evidence. Id. The Kansas Supreme Court denied review.

On September 26, 2013, in the District Court of Sedgwick County, Kansas, petitioner filed a second petition for post-conviction relief. See Motion Per KSA 60-1507 dated Sept. 26, 2013, Overton v. State, Sedgwick Cty. Kan., No. 13-CV-2877. In this petition, petitioner alleged ineffective assistance of counsel with respect to his first Section 60-1507 habeas petition. See id. at 6-7. Because petitioner filed the petition after the statute of limitations expired, the district court summarily denied it. See Order dated Nov. 21, 2013, Overton v. State, Sedgwick Cty. Kan., No 13-CV-2877. The Kansas Court of Appeals affirmed. Overton v. State, No. 111,181, 2015 WL 1636732 at *3 (Kan. Ct. App. Apr. 3, 2015). The Kansas Supreme Court declined review.

On December 4, 2015, petitioner filed a petition for writ of habeas corpus in this Court. Doc. #1. Petitioner asserts five grounds for relief: (1) by admitting testimony concerning uncharged

allegations pursuant to Kan. Stat. Ann. § 60-455, the trial court violated his due process rights; (2) by allowing the jury to view telephone conversation transcripts – which were not admitted into evidence – the trial court violated petitioner's due process rights; (3) by refusing to let him testify, trial counsel violated petitioner's Sixth Amendment right to effective assistance of counsel; (4) by denying an evidentiary hearing, the district court that heard his initial Section 60-1507 petition violated his Sixth and Fourteenth Amendment rights and (5) by summarily denying his second state post-conviction petition, the district court violated his due process rights.

### **Analysis**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, governs the Court's review of this petition. AEDPA governs when federal courts may grant a writ of habeas corpus to a person in a State's custody. Id. It "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). The Court may issue a writ of habeas corpus only if the petitioner's state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); see Charlton v. Franklin, 503 F.3d 1112, 1114-15 (10th Cir. 2007).

The Court will only issue a writ of habeas corpus under the "contrary to" clause in two circumstances. See Williams v. Taylor, 529 U.S. 362, 405 (2000). First, the Court will grant relief if a state court arrives at a conclusion opposite to that reached by the United States Supreme Court

on a question of law. Id. Second, the Court will grant relief when a state court reaches a different result from the Supreme Court in a "materially indistinguishable" case. Id.

The Court may grant relief under the "unreasonable application" clause only when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. When determining whether a state court adjudication constitutes an unreasonable application of federal law, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. A federal court's subjective belief that a state court incorrectly applied federal law does not warrant relief. See id. at 410.

Under the "unreasonable determination of facts" clause, the Court will grant relief only if a petitioner rebuts, with clear and convincing evidence, the initial presumption that all state court factual findings are correct. See Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003). The Court does not presume that the state court correctly determined questions of law or mixed questions of law and fact. See id. Thus, the presumption does not apply when "the state court employed the wrong legal standard in deciding the merits of the federal issue." Id. (quoting Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)).[2]

---

[2]     AEDPA also requires petitioners to exhaust state remedies before seeking post-conviction relief in a federal court. 28 U.S.C. § 2254(b)(1)(A). When a petitioner fails to exhaust state remedies, a district court maintains jurisdiction. See Trest v. Cain, 522 U.S. 87, 89 (1997). Respondents may "expressly waive" the exhaustion requirement. 28 U.S.C. § 2254(b)(3). Here, respondents concede petitioner has exhausted his available state court remedies. Response To Petition For Writ Of Habeas Corpus (Doc. #16) filed May 6, 2016; see also Gonzales v. McKune, 279 F.3d 922, 926 n.8 (10th Cir. 2016) (respondents waived exhaustion by "admit[ting] that petitioner ha[d] properly exhausted" claims). Accordingly, the Court evaluates petitioner's claims on the merits without considering exhaustion issues.

# I.    Evidence Of Uncharged Allegations Under Kan. Stat. Ann. § 60-455

Petitioner claims that the trial court violated his due process rights by admitting evidence of uncharged allegations, specifically A.D.'s testimony concerning her rape allegations. On direct appeal, petitioner argued that testimony concerning uncharged allegations violated a Kansas evidentiary rule and was more prejudicial than probative. Overton, 2003 WL 22897263 at *5-6. Under § 60-455, Kan. Stat. Ann., a court may allow evidence of uncharged crimes in limited circumstances, including when it is "relevant to prove [a] material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Kan. Stat. Ann. § 60-455(b). As evidence of petitioner's plan and identity or modus operandi, the trial court admitted testimony from A.D., the principal and the counselor. Overton, 2003 WL 22897263 at *6. On direct appeal, petitioner's brief only cited state case law and argued that the admitted testimony did not fall within the "plan" exception. Brief of Appellant at 29-32, State v. Overton, 2003 WL 22897263 (Kan. Ct. App. Dec. 5, 2003) (No. 02-88897-A) ("Petitioner's Appellate Brief"). Discussing solely state law, the Kansas Court of Appeals and the Kansas Supreme Court both held that the trial court did not err in admitting this evidence. State v. Overton, 2003 WL 22897263, at *5-8, aff'd, 112 P.3d 547, 551-55 (Kan. 2005).

Respondents assert that petitioner's claim lies solely in state law and that the Court cannot grant habeas corpus relief based on state law errors. It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Federal courts may grant habeas relief only for violations of the Constitution, laws and treaties of the United States. See id. at 68. To the extent petitioner asserts that the trial court

erroneously admitted uncharged allegations under a specific Kansas statute, the Court denies relief because such a claim relies on state law.

On direct appeal, petitioner asserted that A.D.'s testimony violated state law because it was unreliable. Petitioner's Appellate Brief at 32-35 (citing one federal case). The Court liberally construes petitioner's claim, however, and will analyze whether the trial court violated his due process rights by admitting potentially unreliable evidence. Id.

To prevail on his due process claim, petitioner must demonstrate that the state court unreasonably applied or reached a decision contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1). The Supreme Court has held that to violate an individual's due process rights, evidence must be so unreliable that it creates a fundamentally unfair trial. See Perry v. New Hampshire, 565 U.S. 228, 237 (2012); see also Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990) (absent fundamental unfairness, errors in admissibility of evidence not grounds for habeas relief). The Court has also stated that "the potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair." Id. at 245. Here, petitioner contends that inconsistencies between A.D.'s testimony and her previous statements to detectives demonstrates that she lacked credibility. Overton, 2003 WL 22897163 at *7. These discrepancies did not create a fundamentally unfair trial, however, because trial counsel cross examined A.D., the jury weighed her credibility and the trial court instructed the jury concerning its limited purpose as evidence of a "plan." Id. at *8; see also United States v. Ortega, 619 F. App'x. 389, 391 (5th Cir. 2015) (limiting instructions mitigated evidence's potential prejudicial effect under F.R.E. 404(b)). Petitioner has failed to show that the trial court's admission of testimony concerning

uncharged allegations was contrary to or an objectively unreasonable application of well-settled federal law. Accordingly, the Court denies relief on this ground.

## II.     Jury View Of Phone Conversation Transcripts

Petitioner asserts that the trial court violated Kansas law and his federal rights to due process by allowing the jury to view transcripts of telephone conversations during deliberations. The trial court admitted into evidence audio recordings of telephone conversations between Overton and G.B, one of the alleged victims. <u>Overton</u>, 2003 WL 22897263 at *8. It let jurors view transcripts of the conversations only "for purposes of assisting . . . while the tape itself was played to the jury." <u>Id</u>. During deliberation, the court granted the jury's request to view the transcripts again. <u>Id.</u> The court cautioned the jury that the transcripts were "simply a tool to assist [the jury]" and "if [the jury] believe[d] the transcript [wa]s different from what [they] hear[d] on the tape, the tape itself [wa]s controlling." <u>Id.</u> On direct appeal, based on Kansas law, petitioner challenged the jury's use of the transcript. <u>See</u> Petitioner's Appellate Brief at 39-43 (citing <u>State v. Kraus</u>, 26 P.3d 636, 640 (Kan. 2001)). Petitioner argued and the appellate courts analyzed the issue under the Kansas standard for harmless error. <u>Overton</u>, 112 P.3d at 252 (citing <u>State v. Abu-Fakher</u>, 56 P.3d 166 (2002)). The Kansas Court of Appeals and Kansas Supreme Court affirmed, holding that the trial court had erred in letting the jury view the transcript but finding that the error was harmless. <u>See</u> <u>Overton</u>, 2003 WL 22897263 at *9, <u>aff'd</u>, 112 P.3d 547, 556-57 (Kan. 2005).

Petitioner's first state post-conviction appeal again raised the transcript issue, claiming ineffective assistance of counsel for failure to object to the trial court's use of the transcripts and arguing that new evidence established prejudice to petitioner. <u>See</u> Petitioner's First State Habeas Memorandum at 8; <u>see also</u> <u>Overton</u>, 2009 WL 743175 at *1. Petitioner had allegedly obtained a

notarized statement from a juror which stated that the transcript directly caused her to render a guilty verdict. See Overton, 2009 WL 743175 at *3. Petitioner did not present this evidence, however, to the district court. Id. Because petitioner did not present any new evidence and the issue had already been raised on direct appeal, both the district court and the Kansas Court of Appeals denied relief. See id. at *2-3.

Respondents again assert that petitioner alleges violations of Kansas law, which are not grounds for federal habeas relief. Again, the Court denies relief to the extent that petitioner challenges state-law decisions of the Kansas Court of Appeals and the Kansas Supreme Court. Estelle, 502 U.S. at 67-68. In his brief to the Kansas Court of Appeals, petitioner cited just one federal case. See Petitioner's Appellate Brief at 39-43 (citing State v. Kraus, 26 P.3d 636, 640 (Kan. 2001) as governing law). The Court liberally construes petitioner's challenge to the transcript as a due process claim. Petitioner claims that after his direct appeal, he obtained evidence which demonstrates prejudice resulting from the jury's use of the transcripts.

As stated, to receive relief for this claim, petitioner must prove that the state court unreasonably applied federal law or decided the issue contrary to Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The Court's review under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181-82 (2011). Accordingly, the Court cannot consider petitioner's new evidence – the notarized statement concerning the transcript's prejudicial effect – because he did not present it to any state court. Without evidence of prejudice, any trial court error does not implicate petitioner's due process rights by creating a fundamentally unfair trial. See Perry, 565 U.S. at 245. Further, the Tenth Circuit has found that similar non-evidentiary use of transcripts is

constitutionally harmless. <u>Martin</u>, 907 F.2d at 935 (jury view of transcript not constitutional error). The Court denies petitioner's claim that the trial court's error violated his due process rights.

## III. Counsel's Refusal To Let Petitioner Testify On His Own Behalf

Petitioner asserts that trial counsel violated his rights to effective assistance of counsel and due process because he refused to let petitioner testify at trial. In his first state post-conviction petition, he alleged ineffective assistance of counsel. <u>See</u> <u>Overton</u>, 2009 WL 743175 at *1-2. Petitioner asserted that counsel made multiple trial errors, including denying him the right to testify on his own behalf. <u>Id.</u> The district court rejected all of petitioner's claims. <u>Id.</u> On appeal, however, the Kansas Court of Appeals remanded for an evidentiary hearing on this issue. <u>Id.</u> at *7-8. On remand, the district court heard testimony from petitioner and trial counsel and found that petitioner "was aware of his right to testify and made a knowing decision based upon consultation with counsel not to exercise that right." <u>Overton v. State</u>, order dated Sept. 22, 2010, Sedgwick Cty. Kan., No. 06-CV-1581, at 5 (unpublished opinion). The Kansas Court of Appeals affirmed, and the Kansas Supreme Court denied review. <u>Overton</u>, 2012 WL 3822675 at *2-3. Petitioner challenges the trial court's factual finding that counsel did not deny him his right to testify. Additionally, petitioner argues the state court unreasonably applied clearly established federal law by denying his ineffective assistance claim.

### A. Challenge To State Court Factual Findings

Petitioner challenges the factual finding that he knowingly waived his right to testify. Under AEDPA, the Court presumes "factual determinations made by the state court are correct, and the petitioner bears the burden of rebutting this presumption with clear and convincing evidence." <u>Martinez</u>, 330 F.3d at 1262; 28 U.S.C. § 2254(e)(1). During the evidentiary hearing, the state

-12-

district court found that (1) petitioner and his counsel had multiple discussions concerning his right to testify; (2) counsel advised petitioner why testifying might disadvantage him and (3) counsel conferred with petitioner at trial right before he had the opportunity to testify. See Overton v. State, order dated Sept. 22, 2010, Sedgwick Cty. Kan., No. 06-CV-1581, at 4 (unpublished opinion). Based on these findings, the court concluded that trial counsel did not infringe petitioner's constitutional rights. See id. After reviewing the state habeas hearing transcript, the Court finds that the record supports the state court factual determinations. See id. Petitioner has failed to provide any additional evidence, let alone clear and convincing proof, to rebut the state court's findings. Accordingly, the Court presumes that the state court made a reasonable "determination of facts in light of the evidence presented," and petitioner's factual challenge to the state court proceedings does not warrant habeas relief. 28 U.S.C. § 2254(d)(2). The Court denies relief based on petitioner's challenge to the state court's factual findings.

B.    Application Of Clearly Established Federal Law

Petitioner asserts that the state court unreasonably applied federal law when it denied his ineffective assistance claim. Courts analyze ineffective assistance claims under the well-established, two-prong Strickland test. See Strickland v. Washington, 466 U.S. 668, 686-87 (1984). Under this framework, a petitioner must establish that (1) counsel's performance was deficient – or fell below the objectively reasonable standard for representation – and (2) counsel's errors resulted in prejudice. See id.

The Court's "scrutiny of counsel's performance must be highly deferential . . . . to eliminate the distorting effects of hindsight[.]" Id. at 689 (citations omitted). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

-13-

reasonable professional judgment. <u>Dever v. Kan. State Penitentiary</u>, 36 F.3d 1531, 1537 (10th Cir. 1994). Courts grant counsel "wide latitude" when allegedly deficient decisions can be justified as tactical trial decisions. <u>Strickland</u>, 466 U.S. at 689. To be deficient, the Court must find that representation was "completely unreasonable, not merely wrong." <u>Hooks v. Workman</u>, 606 F.3d 715, 723 (10th Cir. 2010).

To demonstrate prejudice, petitioner must establish a reasonable probability that but for counsel's errors, the proceeding's result would have been different. <u>Strickland</u>, 466 U.S. at 486.

In Section 2254 proceedings, the Court applies "doubly deferential" review to ineffective assistance claims because to grant federal relief, it must find the state court's determination objectively unreasonable. <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In sum, petitioner must prove not only deficient performance and prejudice under <u>Strickland</u>, but also that the state court unreasonably applied clearly established federal law. <u>See</u> <u>id.</u>

The state court's denial of petitioner's ineffective assistance claim did not constitute "an unreasonable application" of clearly established law because petitioner failed to establish deficient performance or prejudice. 28 U.S.C. § 2254(d)(1). Petitioner failed to establish a prima facie case of ineffective assistance; thus, the state court's denial of his claim cannot be an unreasonable application of federal law. As established above, trial counsel did not deny petitioner his right to testify on his own behalf but merely advised against him testifying. <u>See</u> <u>Overton v. State</u>, order dated Sept. 22, 2010, Sedgwick Cty. Kan., No. 06-CV-1581, at 2-3 (unpublished opinion). This advice falls within the "wide latitude" of tactical decisions because counsel did not want to subject petitioner to harmful cross-examination, including potential admissions of sexual intercourse with minors. <u>Strickland</u>, 466 U.S. at 689; <u>see</u> <u>Overton</u>, No.06-CV-1581, at 2-3 (unpublished opinion).

-14-

Further, with his conclusory claim that allowing the jury to "observ[e] his demeanor and judge[] his credibility firsthand" could have changed the trial result, petitioner has failed to establish prejudice. Petitioner's First State Habeas Memorandum at 25. Trial counsel also mitigated any potential prejudice by presenting, through other witnesses, the critical facts to which petitioner wanted to testify. See Order Denying Relief Pursuant to K.S.A. 60-1507 Overton v. State, order dated Aug. 23, 2006, Sedgwick Cty. Kan., No.06-CV-1581, at 3-4. Thus, because petitioner failed to prove either deficient performance or prejudice, the Court concludes that the state court did not unreasonably apply federal law and denies petitioner's request for relief.

## IV. District Court Denial Of An Evidentiary Hearing Concerning Ineffective Counsel

Petitioner claims that the district court violated his due process rights by failing to hold an evidentiary hearing during his first state post-conviction petition. In his initial state post-conviction appeal, petitioner alleged ineffective assistance based on, among other things, trial counsel's failure to move to recall the jury after an alleged threat to a juror. See Overton, 2009 WL 743175 at *1-2. The district court denied an evidentiary hearing on the issue. The Kansas Court of Appeals affirmed, finding that petitioner's claim was "based on [an] unsupported bald allegation." Id. at *2, *8-9. The Kansas Supreme Court denied review. Id. at *8-9

Respondents contend that the Court should not grant habeas corpus relief based on errors during state post-conviction review. The Tenth Circuit has established that "challenges involving state post[-]conviction proceedings are not cognizable in a federal habeas action because challenges of this type do not involve a constitutional violation in the underlying convictions." Wallin v. Miller, 661 F. App'x. 526, 534-35 (10th Cir. 2016); see also Hopkinson v. Shillinger, 886 F.2d 1185, 1220 (10th Cir. 1989) (procedural errors during state post-conviction hearings not

federal constitutional claim cognizable in habeas corpus), <u>overruled on other grounds</u> by <u>Phillips v. Ferguson</u>, 182 F.3d 769 (10th Cir. 1999). Here, petitioner does not claim that ineffective performance at trial violated his Sixth Amendment rights; rather, he contends that the district court violated his due process right by denying him an evidentiary hearing in post-conviction proceedings. Doc. #1 at 10. His claim rests on deficiencies in state habeas procedures – errors which the Court cannot remedy through habeas relief. The Court denies relief on this ground.

**V.    District Court Denial Of Petitioner's Second State Post-Conviction Petition**

Petitioner asserts that by summarily denying his second state post-conviction petition, the district court violated his due process rights. In September of 2013, petitioner filed a second state post-conviction petition alleging ineffective assistance of counsel during his initial state habeas petition and subsequent appeal. <u>See</u> <u>Motion Per KSA 60-1507</u> dated Sept. 26, 2013, <u>Overton v. State</u>, Sedgwick Cty. Kan., No. 13-CV-2877. The district court summarily denied the petition because petitioner had filed it beyond the statute of limitations under Kan. Stat. Ann. § 60-1507. <u>See</u> <u>Overton</u>, 2015 WL 1636732 at *1. Section 60-1507 governs Kansas post-conviction appeals. It states that absent exceptional circumstances, all actions must be filed within one year of the direct appeal termination. Kan. Stat. Ann. § 60-1507(f). Petitioner's direct appeal concluded in 2005, about eight years before he filed the second state petition. <u>See</u> <u>Overton</u>, 112 P.3d 244 (Kan. 2005) (affirming conviction and sentence in June of 2005).

Respondents correctly assert that the Court cannot remedy petitioner's alleged injuries through habeas corpus relief because federal courts do not remedy errors in state post-conviction appeals. <u>Wallin</u>, 661 F. App'x. at 534-35 (federal habeas relief unavailable for alleged injuries arising from state post-conviction appeal). Accordingly, the Court denies relief on this ground.

**Conclusion**

For the above reasons, the Court denies the petition for writ of habeas corpus. Petitioner has failed to establish that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Court reached this result through referencing the state court record and concludes that no evidentiary hearing is required. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (evidentiary hearing not needed on issues resolved by state court record).

**Certificate Of Appealability**

Under Rule 11 of the Rules Governing Section 2254, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253. A petitioner meets this standard by showing "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons state above, the Court finds that petitioner has not satisfied this standard. The Court denies a certificate of appealability as to its ruling on petitioner's Section 2254 petition.

**IT IS THEREFORE ORDERED** that Earnest Wayne Overton's Petition For Writ Of Habeas Corpus (Doc. #1) filed December 4, 2015 is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on petitioner's Section 2254 petition is **DENIED**.

Dated this 12th day of September, 2017 at Kansas City, Kansas.

s/ Kathyrn H. Vratil
KATHRYN H. VRATIL
United States District Court